# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 09-2992

_____

Marlon Dale Sun Bear,      *
     *
        Petitioner - Appellant,      *
     *    Appeal from the United States
    v.      *    District Court for the
     *    District of South Dakota.
United States of America,      *
     *
        Respondent - Appellee.      *

_____

Submitted: May 13, 2010
Filed: July 20, 2010

_____

Before BYE, MELLOY, and SHEPHERD, Circuit Judges.

_____

MELLOY, Circuit Judge.

Marlon Dale Sun Bear ("Sun Bear") appeals the district court's dismissal of his motion to vacate his sentence pursuant to 28 U.S.C. § 2255. Sun Bear asserts that his 360-month sentence, which included an enhancement for being a career offender under U.S. Sentencing Guidelines § 4B1.1, was improper in light of Begay v. United States, 553 U.S. 137 (2008). We reverse and remand.

## I.    Background

Sun Bear was sentenced to 360 months' custody on January 7, 2002 after he pled guilty to second-degree murder. The district court sentenced Sun Bear as a career offender pursuant to U.S.S.G. § 4B1.1 based on his adult convictions for attempted escape, attempted theft of a vehicle, and attempted burglary of a commercial building. Consequently, the adjusted offense level was thirty-seven. The court found that Sun Bear's criminal record warranted a criminal history category of VI, resulting in a guidelines range of 360 months to life. Had the court declined to apply § 4B1.1, Sun Bear's offense level would have been thirty-five, resulting in a guidelines range of 292 to 365 months.

In addition, the district court applied a three-level upward departure based on its determination that the criminal history category VI understated the seriousness of Sun Bear's criminal history. However, that departure was offset when the court also decreased the offense level by three levels based on Sun Bear's acceptance of responsibility. Thus, Sun Bear's offense level remained thirty-seven, and he was sentenced to 360 months' custody, the bottom of the applicable guidelines range.

Sun Bear appealed the district court's application of the career offender guideline. Specifically, he argued that the three predicate convictions were not crimes of violence. This Court affirmed the sentence, holding that two of Sun Bear's prior convictions—attempted theft of a vehicle and attempted burglary—were crimes of violence under § 4B1.1. United States v. Sun Bear, 307 F.3d 747, 752–53 (8th Cir. 2002).[1] Sun Bear petitioned for certiorari review, which was denied. Sun Bear v. United States, 539 U.S. 916 (2003) (mem.).

_____

[1]In the Sun Bear appeal, our Court found the government failed to prove the attempted escape was a felony offense. 307 F.3d at 751.

Several years later, in Begay, the Supreme Court of the United States held that driving under the influence of alcohol is not a violent felony for purposes of the Armed Career Criminals Act ("ACCA"). 553 U.S. at 148. In United States v. Williams, 537 F.3d 969, 971 (8th Cir. 2008), we recognized that Begay required us to re-examine our holding in Sun Bear. We ultimately concluded that ordinary auto theft is not a crime of violence for purpose of the ACCA or the career offender guideline. Id. at 975.

On November 12, 2008, Sun Bear filed a motion to vacate his sentence pursuant to 28 U.S.C. § 2255, asserting that attempted theft of a vehicle and attempted burglary are not crimes of violence under the career offender guideline in light of Begay and the post-Begay Eighth Circuit precedent.[2] The district court, notably the same judge who sentenced Sun Bear in 2002, dismissed Sun Bear's § 2255 motion, finding Begay not retroactively applicable to cases on collateral review.

In this appeal, the government concedes that Begay is retroactively applicable to Sun Bear's case because he challenged the career offender enhancement at sentencing and on direct appeal, and because this is his first § 2255 motion. The government also concedes that, after Begay, Sun Bear's prior conviction for theft of a vehicle is not a crime of violence for purposes of the career offender guideline. Rather, the government argues that relief is inappropriate under § 2255 because there was no miscarriage of justice.

---

[2]Sun Bear neither sought direct review nor seeks collateral review of the district court's three-level upward departure based on the inadequacy of the criminal-history categories.

-3-

## II.    Discussion

The parties agree that Sun Bear is not a career offender in light of <u>Begay</u> and that <u>Begay</u> is retroactive. We set forth the reasons for our agreement, though, because these issues are unsettled in our circuit and because these stipulations are dispositive for Sun Bear's § 2255 motion. <u>See</u> <u>Merck & Co., Inc. v. Reynolds</u>, 130 S. Ct. 1784, 1793 (2010) (setting forth reasons for the Court's agreement with the parties on a non-obvious, dispositive legal issue); <u>cf.</u> <u>Swift & Co. v. Hocking Valley Ry. Co.</u>, 243 U.S. 281, 290 (1917) ("[T]he court cannot be controlled by agreement of counsel on a subsidiary question of law.").

### A.    Was Sun Bear a Career Offender?

The career offender sentencing guideline provides for an enhanced offense level for certain crimes if the defendant has two predicate felonies for crimes of violence or qualifying drug offenses. <u>See</u> U.S.S.G. § 4B1.1. Whether an offense is a crime of violence under the sentencing guidelines is the same inquiry as whether an offense is a violent felony under the ACCA. <u>Williams</u>, 537 F.3d at 971. The Supreme Court addressed the latter question in <u>Begay</u>, holding that a prior felony conviction for driving under the influence of alcohol is not a violent felony. 553 U.S. at 148. Whether an offense is a crime of violence, the Court explained, depends on the degree of risk of physical injury *and* whether the crime is similar in kind to the example crimes listed in the ACCA (burglary, arson, extortion, and crimes involving the use of explosives). <u>Id.</u> at 142–43. The focal point of the similarity analysis is whether the offense in question involves conduct that is similarly "purposeful, violent, and aggressive" when compared to the closest analogue among the example crimes. <u>Id.</u> at 144–45. "That conduct is such that it makes it more likely that an offender, later possessing a gun, will use that gun deliberately to harm a victim." <u>Id.</u> at 145. In <u>Williams,</u> we held that the Missouri crimes of auto theft without consent and auto theft by deception are not violent crimes of violence for purposes of § 4B1.1 because they

were not similar in kind to the enumerated offenses.  Id. at 975.  Importantly, we acknowledged that Begay undermined the broad interpretation of the career offender sentencing guideline that we applied in Sun Bear.  537 F.3d at 971.

Sun Bear pled guilty to attempted theft of a vehicle under a Utah statute, which states: "A person commits theft if he obtains or exercises unauthorized control over the property of another with a purpose to deprive him thereof." Utah Code § 76-6-404. This statute is materially indistinguishable from Missouri's offense for auto theft without consent, which is not a crime of violence for purposes of the sentencing guidelines.  Williams, 537 F.3d at 974; see also United States v. Aleman, 548 F.3d 1158, 1168 (8th Cir. 2008) (holding that Minnesota's offense for auto theft without consent is not a crime of violence).  As such, we agree with the parties that Sun Bear's Utah conviction for attempted theft of a vehicle does not qualify as a crime of violence, and therefore, in light of Begay, the sentencing court erred by applying the career offender sentencing guideline.

## B.    Is Begay Retroactive?

Sun Bear filed his § 2255 motion within one year of the Supreme Court's decision in Begay.  Consequently, there is no dispute that Sun Bear's § 2255 motion was timely if Begay applies retroactively in this case.  See 28 U.S.C. § 2255(f)(3). But the question remains whether Begay is retroactively applicable to cases on collateral review.  Because the Supreme Court did not declare that Begay is retroactive, we must apply the established principles of retroactivity:

> When a Supreme Court decision results in a "new rule" of criminal procedure, that rule applies to all criminal cases still pending on direct review, but, as to convictions that are already final, the rule applies only in limited circumstances. New substantive rules–which narrow the scope of a criminal statute or which place particular conduct or persons covered by the statute beyond the State's power to punish–generally apply retroactively. New procedural rules generally do not apply retroactively

unless the rule is of "watershed" magnitude implicating "the fundamental fairness and accuracy of the criminal proceeding," or unless the rule prevents the lawmaking authority from criminalizing certain kinds of conduct.

Never Misses A Shot v. United States, 413 F.3d 781, 783 (8th Cir. 2005) (per curiam) (citing Schriro v. Summerlin, 542 U.S. 348 (2004), and Teague v. Lane, 489 U.S. 288 (1989)).

The rule in Begay, that a crime must be similar in kind to the enumerated offenses in order to qualify as a violent felony under the ACCA, is wholly unlike procedural rules, which "merely raise the possibility that someone convicted with use of the invalidated procedure might have been acquitted otherwise." Schriro, 542 U.S. at 352; see also Welch v. United States, 604 F.3d 408, 415 (7th Cir. 2010) ("[Begay] does not address the accuracy of the process afforded [the defendant]; it addresses the degree to which the government may punish him for his violation of the law."). Admittedly, the rule in Begay is also different from traditional substantive rules. Begay did not narrow any of the elements of a criminal offense and it does not call into question Sun Bear's conviction. Instead, Begay limited the scope of conduct that can be used to increase a person's sentence under a federal statute. For example, in this case, Begay repudiated the sentencing court's basis for determining that the sentencing range was 360 months to life instead of 292 to 365 months. As the Seventh Circuit recently summarized: "When the elements of a crime are narrowed, that change serves to prohibit *any* punishment for the conduct. Begay prohibits *some* of that punishment. We believe, however, that this distinction is one of degree, not one of kind." Welch, 604 F.3d at 415.[3] In accordance with the government's

---

[3]Cf. United States v. Shipp, 589 F.3d 1084, 1090 (10th Cir. 2009) (holding that the rule from Chambers v. United States, 129 S. Ct. 687 (2009), applies retroactively because "the category of substantive rules encompasses not only those rules 'forbidding punishment of certain primary conduct,' but also 'rules prohibiting a certain category of punishment for a class of defendants because of their status or offense.'") (quoting O'Dell v. Netherland, 521 U.S. 151, 157 (1997)). But see United

-6-

concession in this case, we believe that <u>Begay</u> is more akin to a substantive rule than a procedural rule.

The government could argue that <u>Begay</u> is retroactive only for sentencing errors under the ACCA and not for errors under U.S.S.G. § 4B1.1.  However, this Court has held that the inquiries under § 4B1.1 and the ACCA are the same.  <u>Williams</u>, 537 F.3d at 971.  Further, 28 U.S.C. § 2255(f)(3) speaks only of "the right asserted," and we see no basis for limiting the right newly recognized in <u>Begay</u> to the specific statutory context of that case.  Accordingly, we hold that the rule in <u>Begay</u> is applicable retroactively to cases on collateral review.

## C.    Is Sun Bear Entitled to Relief Under § 2255?

Under 28 U.S.C. § 2255(a), a federal prisoner has an avenue of relief if "the sentence was imposed in violation of the Constitution or laws of the United States, or [if] the court was without jurisdiction to impose such sentence, or [if] the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack."  Not every legal error at trial or sentencing warrants relief under this section.  "[A]n error of law does not provide a basis for collateral attack unless the claimed error constituted 'a fundamental defect which inherently results in a complete miscarriage of justice.'"  <u>United States v. Addonizio</u>, 442 U.S. 178, 185 (1979) (quoting <u>Hill v. United States</u>, 368 U.S. 424, 428 (1962)).

We have generally found that sentencing errors are not proper bases for relief under § 2255.  In <u>Auman v. United States</u>, 67 F.3d 157, 161 (8th Cir. 1995), we held

<u>States v. Giggey</u>, 551 F.3d 27, 36 n.3 (1st Cir. 2008) (en banc) (noting that the court's abandonment of its per se rule that non-residential burglary is a crime of violence in favor of the categorical approach from <u>Begay</u> "affects only the procedure by which a district court calculates a defendant's sentence," which is therefore "not a retroactive substantive change in the law.").

-7-

that "ordinary questions of [sentencing] guideline interpretation falling short of the 'miscarriage of justice' standard do not present a proper section 2255 claim." However, Sun Bear's claim is more than a run-of-the-mill claim that the district court misapplied the sentencing guidelines.[4] This case is based on a post-conviction change in the law that renders unlawful the district court's sentencing determination. "There can be no room for doubt that such a circumstance 'inherently results in a complete miscarriage of justice' and 'presents exceptional circumstances' that justify collateral relief under § 2255." Davis v. United States, 417 U.S. 333, 346–47 (1974); see also Welch, 604 F.3d at 412–13 (relief available where a change in the law reduces the defendant's statutory maximum sentence below the imposed sentence); Oliver v. United States, 90 F.3d 177, 180 (6th Cir. 1996) (sentencing issues fully and fairly presented on direct appeal cannot be re-litigated in a § 2255 motion, "absent an intervening change in the law").

The government argues, however, that the district court's error in applying the career offender sentencing guideline was harmless, and therefore Sun Bear cannot demonstrate a miscarriage of justice.[5] During the sentencing proceedings, the district court made several statements that, according to the government, show that the judge would have sentenced Sun Bear to 360 months' custody regardless of whether it applied the career offender guideline. For example, in support of the three-level departure based on the inadequacy of the criminal history categories, the court stated:

---

[4]We also note that Sun Bear's claim is free of the problems that have complicated our prior cases involving § 2255 motions on the basis of sentencing errors. See, e.g., King v. United States, 595 F.3d 844, 852 (8th Cir. 2010) (petitioner waived the right to bring all § 2255 claims except claims of ineffective assistance of counsel or prosecutorial misconduct); United States v. Perales, 212 F.3d 1110, 1111 (8th Cir. 2000) (petitioner procedurally defaulted his "run-of-the-mill Sentencing Guidelines misapplication claim"); Auman, 67 F.3d at 161 (same).

[5]We note that, on direct appeal, the government did not argue that the alleged sentencing error was harmless.

[Sun Bear] already has a criminal history category of VI and that's as far as the table goes. He certainly has more of a criminal history category than VI. I have not seen a man this young have a criminal history of this type in the years that I've sat on the bench since May of 1995. . . . I cannot go any further on the chart. He is more than a career criminal because of the number of offenses of violence, all of which involve a sentence of more than one year. Or a potential sentence of more than one year.

Later, after the court determined that the Sun Bear's offense level was thirty-seven, the court suggested that it was giving Sun Bear a lower sentence than he deserved:

Based solely on the fact that he did cooperate with the government as to the co-defendant, I'm going to sentence the defendant to a minimum of 360 months. And that's probably too lenient a sentence under all of the circumstances here.

After defense counsel objected to the court's authority to impose an upward departure in addition to the career offender enhancement, the court stated: "I find that, in any event, the appropriate sentence is 360 months." The cumulative effect of these statements, the government asserts, is that the error in applying the career offender guideline was harmless.

We have held in several direct appeals that a sentencing error is harmless where the district court makes a clear record that a specific contested sentencing issue would not impact the ultimate determination of a sentence under 18 U.S.C. § 3553(a). See, e.g., United States v. Krueger, No. 09-3186, 2010 WL 1929858, at *1 (8th Cir. May 14, 2010) (unpublished per curiam); United States v. Jackson, 594 F.3d 1027, 1030 (8th Cir. 2010); United States v. Henson, 550 F.3d 739, 741–42 (8th Cir. 2008). Therefore, the government could demonstrate harmless error by pointing to an express statement by the district court that it would have sentenced Sun Bear to 360 months' custody even if the career offender guideline were inapplicable. See Henson, 550 F.3d at 741 ("We need not even venture an inference that the error had no effect on the court's selection of the sentence; here, the district court answered that question

expressly, and it did so after taking into account the potential impact of the specific error involved.") (internal citations omitted). And if the record clearly shows that a sentencing error was harmless, then we would be unable to find a "miscarriage of justice" justifying relief under § 2255.

However, the record is not so clear in this case. At most, the court's statements show that it believed Sun Bear deserved a criminal-history-based upward departure—which it imposed—and that he may have deserved a longer sentence than 360 months. Regardless of what was possible, the court imposed a sentence at the bottom of the guidelines range. Furthermore, the sentencing judge's statement that he was imposing a 360-month sentence "in any event" did not address the specific possibility of an error in applying the career offender guideline. Indeed, that statement is materially indistinguishable from a "blanket statement" that a sentence is "fair," where the statement was "intended to cover any and all potential guidelines calculation errors," which we have held is insufficient to demonstrate harmless error. United States v. Icaza, 492 F.3d 967, 971 (8th Cir. 2007) (quotation omitted). Without a more explicit statement of the court's intention to impose a particular sentence, taking into account the specific issue in controversy, we are unable to find the sentencing error harmless in this case. Cf. Jackson, 594 F.3d at 1030 (error harmless where the district court "provided comments leaving no doubt that it would apply the same sentence regardless of whether the career offender provisions applied").

To be sure, there is overlap between the district court's guidelines range (360 months to life) and the correct guidelines range (292 to 365 months), and Sun Bear's sentence falls within that overlap. However, "such an overlap renders a sentencing error unreviewable only if the district court, at the time of sentencing, states unequivocally that it would impose the same sentence with or without the challenged calculation." Alaniz v. United States, 351 F.3d 365, 368 (8th Cir. 2003). As we explained above, the record does not support such a conclusion.

We note, finally, that the district court judge who dismissed Sun Bear's § 2255 motion was the same judge who sentenced Sun Bear in 2002. If the district court would have given Sun Bear a 360-month sentence regardless of the career offender issue, as the government argues, then we would expect the court to say as much. Instead, in a seven-page order, the court relied entirely on the principles of retroactivity to dismiss Sun Bear's § 2255 motion. The district court has had two opportunities to state that an error in applying the career offender guideline would not have impacted its sentencing determination, and yet has not done so. In these circumstances, we are unable to say Sun Bear's sentence was inevitable.

Accordingly, we hold that Sun Bear has raised a cognizable claim for relief under § 2255.

## III.  Conclusion

For the foregoing reasons, we reverse the district court's judgment and remand this case for further proceedings consistent with this opinion.

_____