BRIGHT, Circuit Judge,
concurring.
I concur with the majority that this case is controlled by our en banc decision in Sun Bear v. United States, 644 F.3d 700 (8th Cir.2011) (en banc). Even though I am obligated to apply the controlling precedent in this case, I write separately to voice my disagreement with our holding in Sun Bear and its resulting impact on Meirovitz.
Meirovitz was classified as a career offender under U.S.S.G. § 4B1.1 based on two prior convictions — second degree manslaughter and possession with the intent to distribute cocaine (along with lysergic acid diethylamide (LSD), and methamphetamine).[4] The career offender status moved Meirovitz from category V to category VI within the sentencing guidelines, though it did not alter the guideline range of 360 months (30 years) to life. The district court accepted the career offender classification and sentenced Meirovitz to life in prison. The sentencing judge highlighted the manslaughter conviction as part of the reason he found Meirovitz to be a violent, career offender: “The top of the guidelines is most appropriate for this defendant because of his substantial criminal record, a long-time, violent drug dealer, involved, among other things, in the shooting death of his mother-in-law.”
In his § 2255 motion, Meirovitz argues that Johnson v. United States, — U.S. -, 130 S.Ct. 1265, 176 L.Ed.2d 1 (2010), states a new rule with retroactive effect that precludes his second degree manslaughter conviction in Minnesota from being considered a “crime of violence” for career offender status under U.S.S.G. § 4B1.1. If Meirovitz’s manslaughter conviction cannot be used to classify him as a career offender, he would be resentenced as a non-career offender and under a lesser category of the guidelines, though with the same advisory guideline range of 360 months (30 years) to life. However, while the government concedes that Johnson states a new rule with retroactive effect, they contest its application to Meirovitz’s manslaughter conviction. We do not reach this issue because, as the majority notes, Meirovitz was sentenced below the statutory maximum and, therefore, our en banc court has concluded that any alleged sentencing error does not rise to the level required for § 2255 relief. See Sun Bear, 644 F.3d at 705. While I am bound by that decision, I respectfully disagree.
Section 2255 can provide relief for a non-jurisdietional, non-constitutional error of law if that error is “a fundamental de *373 feet which inherently results in a complete miscarriage of justice.” Hill v. United States, 368 U.S. 424, 428, 82 S.Ct. 468, 7 L.Ed.2d 417 (1962); see also United States v. Addonizio, 442 U.S. 178, 185, 99 S.Ct. 2235, 60 L.Ed.2d 805 (1979). The statutory-maximum sentence cannot be the only touchstone for whether or not a miscarriage of justice has occurred at sentencing. The Seventh Circuit held as such when it granted relief under § 2255 to a defendant whose then-mandatory sentencing guidelines range was increased by approximately five years due to an erroneous career offender designation. Narvaez v. United States, 674 F.3d 621, 629-30 (7th Cir.2011). While Narvaez is distinguishable from this case, the underlying principles surrounding career offender status apply with equal forces.[5] See id. at 630 n. 14 (noting “to the extent a tension between this opinion and the Eighth Circuit’s reasoning in Sun Bear exists, we respectfully disagree with our colleagues on the Eighth Circuit.”).
Career offender status is reserved for a special subgroup of repeat, violent, and incorrigible defendants. Id. at 629. Classifying an individual as belonging to that category “brand[s them] as a malefactor deserving of far greater punishment than that usually meted out for an otherwise similarly situated individual who committed the same offense.” Id. In Meirovitz’s original appeal, the panel noted his sen-fence was “harsher than other career offenders with significantly more violent backgrounds....”[6] United States v. Meirovitz, 918 F.2d 1376, 1382 (8th Cir.1990). If, under Johnson, Meirovitz should not have been placed in the same category as other violent career offenders, he deserves the opportunity to be resentenced. “Speculation that the district court today might impose the same sentence is not enough to overcome the fact that, at the time of his initial sentencing, [Meirovitz] was sentenced based upon the equivalent of a nonexistent offense.” Narvaez, 674 F.3d at 629. Wrongfully including a defendant as a career offender and sentencing him to life in prison based on that association is the type of “complete miscarriage of justice” deserving of § 2255 relief.
As to the concerns over finality, I quote the well-written views of Judge Hill:
I recognize that without finality there can be no justice. But it is equally true that, without justice, finality is nothing more than a bureaucratic achievement. Case closed. Move on to the next. Finality with justice is achieved only when the imprisoned has had a meaningful opportunity for a reliable judicial determination of his claim.
Gilbert v. United States, 640 F.3d 1293, 1337 (11th Cir.2011) (Hill, J., dissenting), quoted in Sun Bear, 644 F.3d at 711 (Mel *374 loy, J., dissenting). If I were working on a clean slate, I would provide Meirovitz a meaningful opportunity for judicial review by remanding the case to the district court to determine in the first instance whether the rule expressed in Johnson applies to Minnesota’s manslaughter statute.

. His only other conviction was for possession of LSD, cocaine, and methamphetamine in 1979 and was not eligible for career offender status. See U.S.S.G. § 4B1.2(2).

. The Seventh Circuit has not opined on a case where the guideline range remained unchanged or under the now-advisory sentencing regime. See United States v. Wyatt, 672 F.3d 519, 523 (7th Cir.2012) ("Narvaez was sentenced under a mandatory guidelines scheme and Wyatt was sentenced at a time when the district court was aware the guidelines would be considered advisory and so we have not yet considered this precise scenario.”); Narvaez, 674 F.3d at 630 ("the career offender status illegally increased Mr. Narvaez’s sentence approximately five years beyond that authorized by the [then-mandatory] sentencing scheme,” but below the statutory maximum).

. Even in Sun Bear, the district court sentenced the defendant to the bottom of the guideline range — 360 months' (30 years') imprisonment — after the sentencing judge "commented that it had 'not seen a man this young have a criminal history of this type in the years that I’ve sat on the bench,’ and opined that Sun Bear was 'more than a career criminal,’ having ‘done nothing his entire life other than attack people [and] steal their property.’ ” Sun Bear, 644 F.3d at 702, n. 2.